UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT I. REED,

                Plaintiff,

   v.                                   No. 05-CV-1496
                                            (TJM/DRH)

OFFICER MAHUNIC,[1] Correction Officer,

                Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

ROBERT I. REED
Plaintiff Pro Se
93-B-1119
Altona Correctional Facility
555 Devils Den Road
Altona, New York 12910

HON. ANDREW M. CUOMO                SHOSHANAH V. ASNIS, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

    Plaintiff pro se Robert I. Reed ("Reed"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that David Mahunik ("Mahunik"), then a DOCS Corrections Officer, violated

---

     [1] It appears that this defendant's name is correctly spelled "Mahunik." See Mahunik Decl. (Docket No. 39-6). The correct spelling will be used herein.

     [2]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Reed's constitutional rights under the First and Fourteenth Amendments.  Second Am. Compl. (Docket No. 18).  Presently pending is Mahunik's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 39.  Reed opposes the motion.  Docket Nos. 40, 41.  For the following reasons, it is recommended that Mahunik's motion be granted.

## I. Background

The facts are related herein in the light most favorable to Reed as the nonmoving party. See subsection II(A) infra.

On or about April 23, 2003, Reed filed an inmate grievance[3] against Mahunik alleging that his legal mail "was taped as though it had been opened"[4] and that Mahunik did not allow him out of his cell for dinner on one occasion.  Second Am. Compl. ¶ 2(a); Docket No. 39-4, Ex. A at 5-7.  A week later, Reed was interviewed by a sergeant concerning his grievance.  Id. at 3, 12.  During this interview, Mahunik overheard the sergeant questioning him and began yelling profanities at Reed, denying Reed's accusations that he had opened Reed's mail.  Reed Dep. (Docket No. 39-4, Ex. G) at 11.  Additionally, Mahunik submitted a

---

[3] "The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

[4] During Reed's deposition, he stated that there was no tape on the envelope but that the whole letter was opened around the sealed area.  Reed Dep. (Docket No. 39-4, Ex. G) at 6-7.  Reed did not see Mahunik open the mail and Mahunik was one of several corrections officers working on that shift.  Id. at 7.  Because Reed did not see anyone open the mail, he asked Mahunik about the mail and, although Reed cannot recall what either party said, he recalls that he became upset.  Id. at 7-9.

report in which he denied all charges and stated that he delivered Reed's "Parole Board Decision as it was when [he] received it." Docket No. 39-4, Ex/ A at 4. The sergeant found that Reed "ha[d] no additional witnesses or information to add to th[e] grievance . . . [and that he] could find no evidence of staff misconduct or negligence . . . not[ing] that in all the years that [the sergeant] handed out parole decisions many of them were sealed with tape and not sealed as normal mail." Id. at 3. In a decision dated May 2, 2003, Reed's grievance was denied. Id. at 2.

Reed contends that in retaliation for filing the above grievance, "on May 3, 2003 Officer Mahuni[k] authored a false, retaliatory misbehavior report against [him] . . . ." Second Am. Compl. ¶ 2(a); see also Reed Dep. at 5, 14-15. Mahunik claimed that Reed created a disturbance at the gym door area by refusing to produce his identification card ("ID card"), threatening to cause bodily harm to Mahunik, refusing several direct orders, and failing to comply with pat frisk procedures. Docket No. 39-4, Ex. B at 18; Mahunik Decl. ¶ 9.

On May 8, 2003, a Tier III disciplinary hearing[5] was held. T(1). at 1-40.[6] Reed claimed that he was working at the library from 1:00-4:00 p.m. and denied that the incident ever occurred. T(1). 8, 10, 14-15, 17-18. Reed claimed that he went to deliver books to inmates in the Special Housing Unit ("SHU")[7] and upon his return, was ordered to follow Mahunik.

---

[5]DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged. A Tier II hearing, or disciplinary hearing, is required whenever disciplinary penalties not exceeding thirty days may be imposed. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2007).

[6] "T(1)." followed by a number refers to the pages of the transcript of the Tier III disciplinary hearing included with defendant's motion. Docket No. 39-4, ex. C at 25-64.

[7]SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general

3

T(1). at 16.  Reed followed Mahunik until Mahunik told an intake officer that Reed was "locked up."  Id.  Reed claims he did not know that he was going to be detained until he arrived at the cell block and heard Mahunik's directions to the intake officer.  Id.  Mahunik testified at the hearing and again denied filing the misbehavior report in retaliation, clarified that the area where the incident occurred was also where the entrance to the law library was located, and asserted that Reed was in fact in that area during the hours of 1:00-4:00 p.m.  Id. at 28, 31-34, 36.  Reed also did not produce any witnesses to confirm or deny his version of the events, but he stated that he was approached by another unidentified inmate who stated that Mahunik had "a tradition" of writing false misbehavior reports claiming an inmate threatened his life.  Reed Dep. at 18.

Reed was found guilty and was sentenced to ninety days in keeplock[8] and loss of privileges.  Id. at 40.  However, sixty-nine days of the keeplock sentence were suspended, meaning that Reed would only serve them if he was unable to remain incident-free for the next 180 days.  Id.; Reed Dep. at 19.  Thus, Reed was mandated to serve twenty-one days of his sentence. T(1). at 40.  Reed appealed, but the decision was affirmed on July 24, 2003.  Docket No. 39-4, Ex. C at 68-71; Reed Dep. 25.

When Reed was released from keeplock on May 24, 2003, he was approached by an inmate named Harold who warned that the corrections officers had been discussing placing

---

population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at - 301.

[8]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (2007).

4

Reed back in keeplock. Reed Dep. at 20. As Reed was leaving the law library later that day, he observed approximately eight corrections officers[9] standing outside the library, huddled together and laughing at him. Id. at 21. Mahunik again told Reed to follow him upstairs and returned him to keeplock. Id. at 21. The next morning, Reed received another misbehavior report for obstructing the view into his cell, disobeying direct orders to remove the sheet which was causing the obstruction, and making more profane threats to Mahunik. Mahunik Decl. ¶ 10; Docket No. 39-4 at 87. Reed asserts that this misbehavior report was "author[ed] . . . because the penalty that was imposed for the first misbehavior report was not harsh enough." Second Am. Compl. ¶ 2(b).

On May 27, 2003, Reed's Tier II disciplinary hearing on the misbehavior report commenced. T(2). at 1-9.[10] At the hearing, Reed testified that when he left the law library, he saw the eight corrections officers huddled together, was directed to follow Mahunik upstairs, and was placed in keeplock for being out of place. T(2). at 5; see also Reed Dep. at 21. However, Reed contended that he was not out of place, rendering false that charge in the misbehavior report. T(2). at 5. Reed was found guilty on all counts. Id. Reed was sentenced to the remainder of the ninety day keeplock confinement imposed in his earlier disciplinary hearing. Id. Reed appealed, but the disposition was affirmed on June 5, 2003. Docket No. 39-4 at 101-104; Reed Dep. at 25. This action followed.

---

[9] Reed cannot remember or identify any of the corrections officers that were in that group. Reed Dep. at 22.

[10] "T(2)." followed by a number refers to the pages of the transcript of the Tier II disciplinary hearing included with Mahunik's motion. Docket No. 39-4 at 90-98. See also note 5 supra.

5

## II.  Discussion

In his second amended complaint, Reed alleges that Mahunik violated his First Amendment rights by retaliating against him for writing grievances and, liberally construing Reed's pleading, violated his First Amendment rights to access the courts by tampering with his mail and his Fourteenth Amendment rights by filing false misbehavior reports.  Mahunik moves for summary judgment claiming that (1) Reed has failed to establish a First Amendment claims, (2) Mahunik cannot be sued in his official capacity, and (3) Mahunik is entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, __ F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in

7

the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)(citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Mahunik is named in both his individual and official capacities. See Second Am. Compl. at ¶ 1. Reed seeks monetary damages against Mahunik in his official capacity for acts occurring within the scope of his duties with DOCS. Thus, the Eleventh Amendment bar applies and serves to prohibit Reeds' claim for monetary damages against Mahunik in his official capacity.

Accordingly, it is recommended that Mahunik's motion be granted on this ground.

**C. First Amendment**

**1. Retaliation**[11]

Reed contends that Mahunik filed false misbehavior reports in retaliation for the grievances filed by Reed. To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga County, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id. Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Reed has not alleged facts sufficient to support a retaliation claim. There is no question that Reed's conduct in filing grievances and appeals therefrom was conduct protected by the First Amendment. However, Reed has only stated in conclusory terms that Mahunik was retaliating against him for filing grievances. Reed offers no evidence to

---

[11] Liberally construing Reeds' second amended complaint, it appears that he alleges that multiple corrections officers retaliated against him by harassing him. See Second Am. Compl. ¶ 3. However, no other defendants are named and, therefore, allegations against others than Mahunik will not be considered.

9

support his allegations, either through documentation[12] or witness testimony in either the present case or the disciplinary hearings. Thus, he has failed to allege specific facts from which one could conclude that Mahunik's actions were motivated by Reed's constitutionally protected activities. Moreover, the results of both disciplinary hearings and Reed's appeals thereof were findings of guilt against Reed. See subsection D infra.

Accordingly, Mahunik's motion should be granted on this ground.

### 2. Denial of Access to Courts

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). In order to state a claim of denial of access to the courts, including those premised on interference with legal mail, a plaintiff must allege "that a defendant caused 'actual injury,' i.e. took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Id. (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation . . . . Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." Id. (citations omitted); see also Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986) (explaining that an action may not give rise to damages if there was "no showing . . . that the inmate's right of access to

---

[12] Reed did include two other inmates' misbehavior reports which were authored by Mahunik. Docket No. 40 at 8-9. However, these reports were dated two years apart and describe situations different from Reed's even though the rule violated was the same.

the courts was chilled or the legal representation was impaired."); Morgan v. Montanye 516 F.2d 1367, 1371 (2d Cir. 1975) (holding that a single instance of mail tampering which did not lead the plaintiff to suffer any damage was insufficient to support a constitutional challenge).

Liberally construing Reed's second amended complaint, this entire chain of events commenced with the alleged opening of a letter from the parole board. Even construing every alleged fact in Reed's favor, a constitutional challenge has not been substantiated. First, Reed has failed to show a regular and unjustifiable pattern of interference because this, and one other incident of missing legal mail were the only incidents of alleged mail tampering which Reed has identified. During his deposition, Reed offered conclusory statements concerning Mahunik and admitted that he was unaware which corrections officer allegedly opened his mail. Naming Mahunik because he was on duty when the mail was delivered lacks adequate specificity. These statements, without more, are insufficient to raise an issue of material fact as to the prevalence of Mahunik's alleged interference. Thus, this isolated incident is insufficient to support a First Amendment claim.

Second, Reed suffered no demonstrable injury from the incident. Reed still received his parole board mail. He has failed to allege or prove any other prejudice to his parole application or any other legal proceeding. Additionally, the record establishes that Reed has been extremely successful in filing multiple grievances at all the correctional facilities where he has been incarcerated as well as filing and participating in motion practice in the instant litigation.

Therefore, any claims concerning denial of access to the courts will not lie and Mahunik's motion as to this claim should be granted.

**D. False Misbehavior Report**

Reed contends that Mahunik violated his due process rights by filing two false misbehavior reports. A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).

First, as discussed supra, Reed has failed to state a claim for retaliation. Thus, the due process violation cannot stand. However, regardless of whether Reed asserts a retaliation claim, his contentions run afoul of the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477, 487-88 (1994). That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983. This rule applies to challenges to prison disciplinary proceedings. Edwards. v. Balisok, 520 U.S. 641, 648 (1997). There is no evidence that Reed's disciplinary determinations were ever vacated. Therefore, because his recovery of damages here for false misbehavior reports would necessarily imply the invalidity of his convictions on those reports, Reed's claim here cannot stand.

Accordingly, any claims relating to a denial of due process based upon the filing of false misbehavior reports must fail and Mahunik's motion as this claim should be granted.

**E. Qualified Immunity**

Finally, Mahunik contends that he is entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

With regards to Reed's claims,  the second prong of the inquiry need not be reached because, as discussed supra, Reed has not shown that Mahunik violated his constitutional rights.  Therefore, it is recommended in the alternative that Mahunik's motion on this ground be granted in all respects.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Mahunik's motion for summary judgment (Docket No. 39) be **GRANTED** as to all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 26, 2008
       Albany, New York

_David R. Homer_
United States Magistrate Judge